IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | No. 1:09-CR-395-1 |
| | ) | |
| HOUSE OF RAEFORD FARMS, INC. | ) | |

**DEFENDANT HOUSE OF RAEFORD'S MOTION TO DISMISS
SUPERSEDING INDICTMENT UNDER THE SPEEDY
TRIAL ACT AND MOTION TO ADOPT**

Defendant House of Raeford Farms, Inc. ("House of Raeford"), through counsel and pursuant to the Speedy Trial Act of 1974, 18 U. S. C. § 3161 *et seq.* ("the Act" or "the STA"), respectfully moves the Court to dismiss the Superseding Indictment against it. House of Raeford further moves pursuant to Local Rule 12.1(c) to adopt and incorporate herein by reference co-defendant Gregory Steenblock's Motion to Dismiss under the STA [DE 87] and the arguments set forth therein. Finally, in addition to the arguments in Mr. Steenblock's Motion, House of Raeford offers additional reasons—peculiar to the charges against the company—why dismissal should be with prejudice.[1]

## I.    FACTS

House of Raeford incorporates by reference the recitation of facts and offers of evidence in Mr. Steenblock's Motion.

---

[1] Of course, some of what appears in Mr. Steenblock's Motion is peculiar to him. Most significantly, the shadow cast by federal indictment is larger and darker. House of Raeford is an important part of its community—it employs more than 1000 people in a rural North Carolina county—but the personal stress and strain of this case are much more severe for Mr. Steenblock.

## II.     ANALYSIS

### A.     **Seriousness of the Offense**[2]

By its terms, the Clean Water Act regulates "the discharge of any pollutant" into "navigable waters."[3]   *See* 33 U.S.C. §§ 1311, 1362 ("CWA").   To address discharges through sewers to navigable waters, Congress directed the Environmental Protection Agency ("EPA") to establish pretreatment standards to regulate discharges to sewers that would interfere with the operation of a sewage treatment plant or pass through the plant without adequate treatment:

> Pretreatment standards under this subsection . . . shall be established to prevent the discharge of any pollutant through a treatment works, which pollutant interferes with, passes through or otherwise is incompatible with such works.

33 U.S.C. § 1317(b)(1).   The EPA promulgated federal pretreatment regulations, consistent with Congress's mandate, with explicit goals for protecting sewage systems from interference and pass through.  *See* 40 C.F.R. § 403.2.  In these regulations, the EPA defined "interference" and "pass through" to mean industrial discharges that cause the municipal treatment plant to violate the Clean Water Act or some other federal environmental requirement.[4]

---

[2] As Mr. Steenblock's brief discusses, the seriousness of the offense is a primary factor in determining whether dismissal under the STA should be with prejudice. *United States v. Taylor*, 487 U.S. 326, 333 (1988).

[3] "Navigable waters" means the waters of the United States, including the territorial seas.  33 U.S.C. § 1362(7).

[4] *See* 40 CFR 403.3(k) (2006) (defining "Interference" as a discharge that "is a cause of a violation" of a city-owned treatment plant's National Pollution Discharge Elimination System ("NPDES") permit or the prevention of sewage sludge use or disposal in compliance with certain

2

As noted in Mr. Steenblock's Motion, the City of Raeford's wastewater treatment plant did not violate its Clean Water Act permit—issued to the City by the state—as a result of *any* of the discharges alleged in the Superseding Indictment.[5]  Thus, this case does not implicate the concerns addressed by Congress in section 307 of the Clean Water Act or by the EPA in the national pretreatment regulations.

As far as we can tell, no party has ever been subjected to federal prosecution for discharging into a municipal sewer where, due to effective treatment by the municipality, the alleged pollutants did not reach the navigable waters.  Indeed, the Department of Justice rarely if ever brings any CWA enforcement action—criminal or civil—where the impact on the environment is zero [DE 20, Ex. E].  Yet it has done so here.

The allegations in this case are that House of Raeford violated municipal standards established in a pretreatment Permit [DE 36 at 2, 5-6].[6]  Those standards were set by the City of Raeford, acting under delegated federal authority, not by Congress or the EPA. *Id*.  Yet all of the alleged offenses in this case occurred when House of Raeford was

---

federal requirements); 40 CFR 403.3(p) (2006) (defining "Pass Through" to mean a discharge that "is a cause of a violation of any requirement of the [city-owned treatment plant]'s NDPES permit").

[5] As explained more fully in Mr. Steenblock's brief (Section III.B.1 at n.5 & Ex. 1-2), the City was able to fully and effectively treat all of the City's wastewater—including what it received from House of Raeford—for every month during which the Superseding Indictment alleges offenses by House of Raeford [DE 87].

[6] The government's prosecution of this case depends on delegation to municipalities of the authority to determine what conduct will constitute federal crimes [DE 36 at 1-2].  As House of Raeford has thoroughly argued previously, such delegation of legislative power is invalid. However, that that is not the issue in this Motion, which assumes without conceding that the delegation here was valid and properly accomplished.

3

working actively *with* the City—its "Control Authority" under EPA pretreatment regulations[7]—to fix the underlying problems by building new pretreatment facilities.

Under the same Permit it is charged now with violating, House of Raeford was explicitly prohibited from installing new pretreatment facilities until receiving permission from its federally designated Control Authority, the City. [*See* DE 20, Ex. B2 at 5, 15]. Accordingly, during the exact period covered by the Superseding Indictment—beginning in January 2005 and concluding in September 2006—House of Raeford was working with the City to study, design, construct, and bring online an upgrade to its pretreatment system [DE 20, Ex. C; DE 55, Ex. I, J]. At a cost of $1.4 million, the upgrade replaced the portions of its pretreatment system where problems were occurring, successfully eliminating the problems in the fall of 2006 [DE 55, Ex. J]. Furthermore, during the same period, House of Raeford paid the City nearly $1 million in fines and surcharges for the alleged violations that occurred while the upgrade was being planned, designed, and built [DE 55, Ex. G, H]. Thus, to summarize:

- the municipality—which was able to treat *all* of the pollutants in the alleged discharges—received compensation for its efforts,

- House of Raeford was heavily penalized by the City—its Control Authority—for any wastewater issues that existed before the upgrade,

- House of Raeford's pretreatment problems were solved years ago, and

- no pollutants reached the environment.

And all of that occurred within the municipal enforcement framework.

---

[7] *See* 40 CFR § 403.3 (f) (2006); DE 36 at 6.

The federal system of wastewater regulation depends on delegated authority. *See* 33 U.S.C. § 1342; *see also Solid Waste Agency of N. Cook County v. U.S. Army Corps of Eng'rs*, 531 U.S. 159, 166-67 (2001); *Rapanos v. United States*, 547 U.S. 715, 722-23 (2006) (Scalia, J., plurality opinion). Congressional authority is delegated to the EPA, which in turn delegates to states, which in turn delegates to municipal officials. In this case, that system worked. The municipal Control Authority forged an effective regulatory solution. Thus, this criminal case—an effort to further penalize a company that long ago paid a heavy price and corrected its wastewater problems—is untimely, unnecessary, unjust, and unserious.[8]

### B.    Administration of the Act and of Justice[9]

As Mr. Steenblock observed in his Motion, the genesis of this case was a dispute between the City and House of Raeford regarding the company's wastewater pretreatment program. That dispute was resolved more than five years ago, through a Consent Order that required House of Raeford to upgrade its wastewater pretreatment facilities [DE 20, Ex. C; *see also* DE 55, Ex. J]. Accordingly, and because there was no environmental impact at all, society's interest in reprosecuting House of Raeford is minimal to nonexistent. *Cf. United States v. Bundu*, 479 F. Supp. 2d 195, 199 (D. Mass.

---

[8] Expressed differently, the offenses alleged in the Superseding Indictment are not so grave that one could justifiably say that society's interest in reprosecuting House of Raeford would be insulted were this case dismissed with prejudice. *See United States v. Hastings*, 847 F.2d 920, 925 (1st Cir. 1988).

[9] *See* 18 U.S.C. § 3162(a)(2) (requiring courts to consider, in determining whether dismissal should be with prejudice, the impact of a reprosecution on the administration of the STA and on the administration of justice).

5

2007) ("[T]he instant case presents a situation of a more personal dispute between warring parents rather than a crime of societal importance . . . [T]his court simply does not perceive a great societal interest in continuing to prosecute a personal dispute which the parties themselves have resolved.").

The principle of *Bundu* is particularly applicable in this case. As discussed in detail above, the party with whom House of Raeford had the prior dispute—the City—was the Control Authority charged by the EPA with regulating House of Raeford's wastewater pretreatment. Indeed, it was acting under the EPA's delegated authority. House of Raeford reached a resolution with its federally authorized Control Authority. It paid fines, paid surcharges, and fixed the underlying problems, all at great expense and all without any effect on the environment. It is in the "societal interest" to promote such resolutions—for industrial users to work with their municipal regulators to resolve compliance issues. Continuing to prosecute House of Raeford would only undermine that interest.

## III.    CONCLUSION

For the reasons detailed in Mr. Steenblock's Motion, and for the additional reasons articulated here, House of Raeford respectfully requests that the charges against it be dismissed with prejudice.

6

Respectfully submitted this the 3rd day of January, 2012.


/s/ Kearns Davis
Kearns Davis
N.C. State Bar No. 22014
kdavis@brookspierce.com

/s/ Darrell A. Fruth
Darrell A. Fruth
N.C. State Bar No. 33418
dfruth@brookspierce.com

/s/ Wes J. Camden
Wes J. Camden
N.C. State Bar No. 33190
wcamden@brookspierce.com

Brooks, Pierce, McLendon,
 Humphrey, & Leonard, L.L.P.
P. O. Box 26000
Greensboro, NC 27420-6000
(336) 373-8850

*Attorneys for Defendant*
*House of Raeford Farms, Inc.*

7

## CERTIFICATE OF SERVICE

I hereby certify that, on the date below, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Ripley Rand, Esq.

Frank Chut, Esq.

Daniel W. Dooher, Esq.

Mary Dee Carraway, Esq.

H. Gerald Beaver, Esq.

Laura Beaver, Esq.

This the 3rd day of January, 2012.

/s/ Wes J. Camden
Wes J. Camden

8