IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

UNITED STATES OF AMERICA      )
                              )          1:09CR395-1
       v.                     )          1:09CR395-2
                              )
HOUSE OF RAEFORD FARMS, INC.  )
and GREGORY STEENBLOCK        )

MEMORANDUM OPINION AND ORDER

This matter is before the Court on Motions to Dismiss [Doc. #87 & #88] filed by

Defendants Gregory Steenblock ("Steenblock") and House of Raeford Farms, Inc. ("House of

Raeford), collectively ("Defendants"), seeking to dismiss the Superseding Indictment under the

Speedy Trial Act.[1]  The Court held a hearing on Defendants' Motions on January 26, 2012.  At

the conclusion of the hearing, the Court granted Defendants' Motions to Dismiss the

Superseding Indictment without prejudice.  The Court now issues the present Order to

memorialize its ruling in this matter.

I.     PROCEDURAL HISTORY

The Government filed an Indictment against Defendants on November 30, 2009, alleging

violations of the Clean Water Act, 33 U.S.C. § 1251, *et seq.*  Thereafter, the Court scheduled a

trial in the matter to begin on January 11, 2010.  On December 18, 2009, following a consent

---

[1]  Defendant Steenblock filed his Motion to Dismiss [Doc. #87] on January 3, 2012.
Thereafter, Defendant House of Raeford filed its own Motion [Doc. #88] to dismiss the
Superseding Indictment under the Speedy Trial Act and to adopt Defendant Steenblock's
Motion.  While the Motions present substantially similar arguments, to the extent that the
Motions differ, the Court will address those differences as necessary herein.

Motion to Continue, the Court continued the trial to April 12, 2010.[2] The Government thereafter filed a Superseding Indictment against Defendants on March 31, 2010, which included only minor changes to the Indictment and did not add any new charges.[3]

The parties began filing pretrial motions on April 12, 2010, including a Motion to Dismiss the Superseding Indictment by Defendant House of Raeford contending that trial of Counts 1-6 and 9-14 of the Superseding Indictment would violate the double jeopardy clause of the Fifth Amendment. Per the Scheduling Order in this case, the Court held a hearing on the pretrial motions on May 3, 2010, during which the Court disposed of several motions from the bench. Following the hearing, the Court issued a Memorandum Opinion and Order on May 27, 2010, denying Defendant House of Raeford's Motion to Dismiss the Superseding Indictment. Immediately thereafter, Defendant House of Raeford filed a Notice of Appeal on the issue of double jeopardy, pursuant to Abney v. United States, 431 U.S. 651, 97 S. Ct. 2034, 52 L. Ed. 2d 651 (1977), and 28 U.S.C. § 1291.[4] On June 11, 2010, following the determination that a non-waiveable conflict had arisen with Judge Thomas D. Schroeder, the jury trial for this matter was

---

[2] In the December 18, 2009 Order, the Court concluded that the "ends of justice served by granting the defendants' motion for a continuance outweigh the best interests of the public and the defendants in a speedy trial," and excluded "the time between January 11, 2010 and April 12, 2010" under 18 U.S.C. § 3161(h)(7).

[3] The parties agree that, given the limited nature of the changes made to the Indictment, the filing of the Superseding Indictment did not serve to restart or add any time to the Speedy Trial Act clock in this case.

[4] Title 28, United States Code, section 1291 states that "[t]he courts of appeals . . . shall have jurisdiction from all final decisions of the district courts." The Supreme Court in Abney held that a pretrial order denying a motion to dismiss an indictment on double jeopardy grounds was a "final decision" for purposes of 28 U.S.C. § 1291, and was therefore immediately appealable. Abney, 431 U.S. at 659, 97 S. Ct. at 2040.

cancelled and the case was transferred to Chief Judge James A. Beaty, Jr. Thereafter, Judge Beaty granted the parties' Joint Motion to stay the proceedings pending resolution of Defendant House of Raeford's appeal.

The Fourth Circuit entered an Order dismissing Defendant House of Raeford's appeal on October 18, 2010 and thereafter denied Defendant House of Raeford's Motion to Reconsider on February 22, 2011. The Fourth Circuit's Mandate issued and was received by this Court on March 11, 2011, and this case was set for trial. Thereafter, Defendant House of Raeford filed a Motion to Stay pending resolution of its petition for a writ of certiorari to the Supreme Court. In its subsequent Order of April 21, 2011, this Court first construed Defendant House of Raeford's Motion to Stay as a Motion to Continue. The Court then granted the continuance, noting that the Speedy Trial clock began running upon the Court's receipt of the Fourth Circuit's Mandate on March 11, 2011, but that the Court would exclude the time from April 21, 2011 through the resolution of Defendant House of Raeford's petition based on the finding that the ends of justice served by granting the continuance outweighed the best interest of the public and Defendants in a speedy trial.

The Supreme Court denied Defendant House of Raeford's petition on October 3, 2011. For two months following the Supreme Court's denial, no action took place on the official docket regarding the continuation of the proceedings in this case.[5] As such, the Court, on

---

[5] The Court notes that in their most recent briefing in opposition to Defendants' Motions to Dismiss, the Government included exhibits showing internal email communications with personnel in the Clerk's Office, which the Government contends provided notification of its intent to proceed to trial in this case. As discussed in more detail below, the Court was not aware of these communications, and the Government did not file any official documentation on the docket for this case prior to Defendants' filing of their present Motions to Dismiss.

3

December 14, 2011, set *sua sponte* a status conference for January 5, 2012, in order to determine the present status of this matter and to determine whether the Government intended to proceed with this case. On January 3, 2012, Defendants filed the present Motions to Dismiss the Superseding Indictment, thus prompting the Court to continue the Status Conference to January 26, 2012, in order to allow the Government an opportunity to respond to the Motions to Dismiss, and to provide both parties the opportunity to prepare for a full hearing on the Motions.

At the January 26, 2012 hearing, the parties raised two issues before the Court: (1) whether the Speedy Trial Act was violated, thus requiring dismissal of the Superseding Indictment; and (2) whether, if the Speedy Trial Act was violated and the Superseding Indictment was dismissed, such a dismissal should be with or without prejudice. The Court will address each issue in turn.

## II. VIOLATION OF THE SPEEDY TRIAL ACT

Under the Speedy Trial Act, the trial of a defendant must commence within seventy days of the filing of the indictment or the first appearance, whichever date is later. 18 U.S.C. § 3161(c)(1). However, although the statute sets forth this seventy-day requirement, the statute permits exclusion of certain defined periods from the total calculation of time. With regard to the present case, the parties primarily dispute the amount of time that should be excluded in

relation to the filing and resolution of certain pretrial motions.[6]  Based on that dispute, the

relevant provisions of the statute are as follows:

> (h) The following periods of delay shall be excluded in computing the time within which an information or an indictment must be filed, or in computing the time within which the trial of any such offense must commence:
>> (1) Any period of delay resulting from other proceedings concerning the defendant, including but not limited to--
>> . . . .
>> (D) delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion;
>> . . . .
>>
>> (H) delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court.

18 U.S.C. § 3161(h).

In <u>Henderson v. United States</u>, the Supreme Court found that subparagraphs (D) and (H)

of the Speedy Trial Act must be read to create a distinction between pretrial motions that require

a hearing and those that do not require a hearing.  <u>Henderson v. United States</u>, 476 U.S. 321,

329-30, 106 S. Ct. 1871, 1876, 90 L. Ed. 2d 299 (1986).  Applying the interpretation in

<u>Henderson</u>, the Fourth Circuit concluded that:

---

[6]  The parties agree that thirteen (13) days of non-excludable time ran between Defendants' initial appearance on December 2, 2009, and the filing of the parties' Joint Motion to Continue on December 16, 2009.  The parties disagree, however, as to whether the twenty-three (23) day period between December 18, 2009, the date of the Court's continuance Order, and January 11, 2010, the original trial date, constitutes excludable time.  However, the Court notes, and the Government has suggested in its briefing, that the inclusion or exclusion of these 23 days is not dispositive as to the issue of whether the Speedy Trial Act was violated in this case.  As such, the Court will focus its discussion on the period of time beginning April 12, 2011, the date Defendant House of Raeford filed its Motion to Dismiss the Superseding Indictment on double jeopardy grounds.

> Where a hearing is required, subparagraph ([D]) excludes the entire period from the filing of the motion to the conclusion of the hearing on that motion, regardless of whether any delay in holding the hearing was "reasonably necessary." Once the court has held the hearing and received any post-hearing submissions from the parties that it needs for proper disposition of the motion, the court takes the motion "under advisement" and subparagraph ([H]) excludes up to 30 additional days thereafter, up to and including the date on which the court finally disposes of the motion. If the pretrial motion requires no hearing, sub paragraph ([D]) excludes the period from the filing of the motion to the time the court receives all the papers it reasonably expects. Once the court has received the papers, the motion "is actually under advisement" and subparagraph ([H]) excludes up to 30 additional days thereafter, up to and including the date on which the court finally disposes of the motion.

United States v. Parker, 30 F.3d 542, 546 (4th Cir. 1994) (internal citation omitted).

Based on the distinctions made in Henderson and Parker between motions that require a hearing and those that do not, and the associated excludable time under the Speedy Trial Act, the parties in this case dispute how to categorize the pretrial motions at issue. In addition, to the extent that any pretrial motions would require a hearing, the parties dispute whether the May 3, 2010, motions hearing before Judge Schroeder satisfied that requirement in full, or whether an additional hearing would be necessary. Although the Government contends that several pretrial motions continue to toll the Speedy Trial Act clock due to the need for a first or further hearing prior to resolution,[7] the primary dispute raised in the parties' briefing and by the parties

---

[7] The Government contends that five motions require a hearing prior to resolution in this case, including Defendant Steenblock's Motion to Strike Surplusage and Motion to Adopt [Doc. #42], three Motions to Compel Discovery [Doc. #21, 23, 30], and the Government's Motion in Limine [Doc. #44]. The Government contends that these Motions either were not heard at all at the May 3, 2010 hearing, or were not heard through to resolution, and therefore the Speedy Trial Act clock would remain tolled until the conclusion of any future hearing on these Motions, pursuant to § 3161(h)(1)(D). In contrast, Defendants generally contend that, to the extent a hearing was required for any pretrial motion in this case, a hearing on "all pretrial motions" was held on May 3, 2010. Defendants contend that the parties had ample opportunity

at the January 26, 2012, hearing, revolves around the nature and status of Defendant House of Raeford's Motion to Strike Surplusage [Doc. #40].

Defendant House of Raeford moved to strike as surplusage certain portions of the Superseding Indictment based on its contentions that certain language was prejudicial, inflammatory, or irrelevant. At the May 3, 2010, motions hearing, Judge Schroeder briefly took up the Motion to Strike Surplusage by first asking the parties whether they would seek to have the Superseding Indictment presented to the jury, since an answer in the negative would make discussion of the Motion a moot point. Upon the Government's response that it would like the Superseding Indictment to be given to the jury, the Court stated, "[G]iven the hour, I am not going to take that one up at this time then, and I will resolve that if and when we get to trial." (Motions Hearing Tr. at 81:24-82:1). The Government contends that Judge Schroeder's statement indicated the Court's intent to hold an additional hearing on the Motion to Strike Surplusage at the time of trial. As such, the Government contends that any hearing on the Motion to Strike Surplusage would not conclude until the time of trial, thus tolling the Speedy Trial Act clock.

---

to raise issues regarding any and all pretrial motions at that time, and to the extent no discussion took place at the hearing, Defendants contend that the Court was able to rely fully on the parties' extensive briefing on all motions at issue. As such, Defendants contend that, for the motions requiring a hearing, the Speedy Trial Act clock was tolled from the filing of the pretrial motions, through the conclusion of the May 3, 2010, hearing, and for only an additional 30 days following the hearing, per § 3161(h)(1)(D). Furthermore, for those motions not requiring a hearing, Defendants contend that the Speedy Trial Act was tolled for only 30 days after all briefing was filed by the parties and the Court was placed in a position to dispose of the motions at issue.

In support of its position, the Government cites to the Fourth Circuit case <u>United States</u> <u>v. Riley</u>, 991 F.2d 120 (4th Cir. 1993). In <u>Riley</u>, the district court held a hearing on pretrial motions, during which the court resolved all but the defendant's motion to suppress. <u>Riley</u>, 991 F.2d at 123. With regard to the motion to suppress, the district court stated, "'the Court is not in a position to rule on the motions to suppress at this time. If at trial the Government decides to offer the evidence, the Court will conduct a hearing to determine its admissibility at that time.'" <u>Id.</u> After a period of delay, including a mistrial and retrial, the defendant ultimately moved to dismiss the indictment based on the Speedy Trial Act. <u>Id.</u> The government, however, argued that because the district court deferred ruling on the motion to suppress until trial, the motion remained pending, and the entire time period since the filing of the motion to suppress was excluded under the Speedy Trial Act. <u>Id.</u> The district court agreed with the government and denied the defendant's motion. On appeal, the Fourth Circuit affirmed the district court's decision, holding that "[b]ecause the motion to suppress was a pretrial motion, the hearing for which did not conclude until trial, the district court properly excluded the period between its filing and its resolution." <u>Id.</u> at 124.

In the present case, the Government contends that Judge Schroeder's statement, "[G]iven the hour, I am not going to take that one up at this time then, and I will resolve that if and when we get to trial", mirrors the statement made by the trial judge in <u>Riley</u>, and indicates an intent to hold a further hearing on the Motion to Strike Surplusage. As such, the Government contends that, based on the holding in <u>Riley</u>, the hearing on the Motion to Strike

Surplusage would not conclude until the time of trial, thus tolling the Speedy Trial Act clock for the entire period beginning at the filing of the Motion to Strike Surplusage.

Defendants, on the other hand, challenge the Government's reliance on <u>Riley</u> to support the Government's contention that the Court intended to defer resolution of the Motion to Strike Surplusage and that any such deferral would toll the Speedy Trial Act clock. Defendants distinguish <u>Riley</u> from the present case, in that the district court in <u>Riley</u> expressly stated that it would hold another hearing on the motion to suppress at that time, thus holding over the hearing on that motion until trial. In contrast, Defendants contend that in this case, Judge Schroeder's statement does not clearly indicate that the Court intended to hold a subsequent hearing in order to resolve the Motion to Strike Surplusage. Rather, Defendants contend that all required and intended hearing on the issue of the Motion to Strike Surplusage concluded on May 3, 2010, and the total excludable period under § 3161(h)(1)(D) came to an end thirty (30) days later, on June 3, 2010. Given the subsequent appeal and stay of the case, Defendants contend that the Speedy Trial Act clock began to run at the issuance of the Fourth Circuit's Mandate, was tolled briefly while the case went to the Supreme Court on Defendant House of Raeford's petition for writ of certiorari, and subsequently began to run again at the issuance of the Supreme Court's decision on October 3, 2011, with no additional tolling attributable to pretrial motions. In addition, Defendants contend that this Court's April 21, 2011, Order, which stated that "[t]he Speedy Trial clock began running upon this Court's receipt of the Fourth Circuit Mandate", put the Government on notice that the clock was running, and the Government failed to object to the Court's calculation at any time thereafter. As such,

Defendants contend that a total of 153 non-excludable days have passed in this case, that such a period of time is a violation of the Speedy Trial Act, and that the Superseding Indictment in this case should be dismissed.

At the January 26, 2012, hearing, after both parties had the opportunity to present their arguments, the Court concluded that a Speedy Trial Act violation did occur in this case. In reaching that conclusion, the Court first found that the Government was on notice of the running of the Speedy Trial Act clock as of the Court's Order on April 21, 2011, wherein the Court specifically advised the parties that the Speedy Trial Act calculation continued to run upon receipt of the Fourth Circuit's Mandate in this case. Although the April 21, 2011, Order excluded the time from the date of the Order until the resolution of Defendant House of Raeford's petition for certiorari, the Court noted that at no time after the Supreme Court's October 3, 2011, denial of Defendant House of Raeford's petition did the Government file any motion with respect to continuing this case in a manner that might have affected the running of the Speedy Trial Act clock. The Court acknowledged that the Government did provide evidence of some communication with personnel in the Clerk's Office regarding the Supreme Court's denial of Defendant House of Raeford's petition, as was shown through email exhibits in the Government's brief in opposition to the present Motions to Dismiss. However, the Court noted that, apart from those exhibits, there was nothing on the docket or within the proper record before the Court that would have made the Court aware of any internal communication between the Government and Court personnel, or of the Government's intentions in this case.

With regard to the Government's contention that pretrial motions, specifically the Motion to Strike Surplusage, served to toll the Speedy Trial Act clock, the Court found that the Motion to Strike Surplusage was not the type of motion that would require a hearing, given the statements made by Judge Schroeder at the May 3, 2010, hearing, and given what was at issue in the Motion. More specifically, the Court noted that the Motion to Strike Surplusage raised the issue of whether or not an indictment that included language that Defendants considered to be prejudicial would be submitted to the jury. The Court further noted that after the Government requested that the indictment be submitted to the jury, Judge Schroeder merely reserved decision as to whether to send the indictment to the jury to a specific point at trial, without requiring an additional hearing. Based on all of the information presented, the Court concluded that, although the violation of the Speedy Trial Act in this case may have been technical in nature, the Speedy Trial Act makes no exceptions for technical violations. As such, the Court concluded that a Speedy Trial Act violation had occurred in this case, and therefore determined that the Superseding Indictment in this case must be dismissed. See 18 U.S.C. § 3162(a)(2).

III.    DISMISSAL WITH OR WITHOUT PREJUDICE

Upon the determination that a Speedy Trial Act violation occurred and consequently that the Superseding Indictment must be dismissed, the Court acknowledged that it must consider the relevant factors set forth in 18 U.S.C. § 3162(a)(2) to determine whether the dismissal should be with or without prejudice. Under 18 U.S.C. § 3162(a)(2), the relevant factors include the seriousness of the offense, the facts and circumstances of the case which led to the dismissal,

and the impact of a reprosecution on the Speedy Trial Act and on the administration of justice. Requiring consideration of these factors "is designed to promote compliance with the [Speedy Trial] Act without needlessly subverting important criminal prosecutions." Zedner v. United States, 547 U.S. 489, 499, 126 S. Ct. 1976, 1984, 164 L. Ed. 2d 749 (2006).

Addressing the first factor, the seriousness of the offense, the Court found that, to the extent that the Government alleges continuing violations in the form of improper discharge, even while Defendants engaged in obtaining a consent order from the City of Raeford, such offense conduct would be serious in nature. As to the second factor, the facts and circumstances leading to dismissal, the Court noted that the violation of the Speedy Trial Act in this case amounted at most to inadvertence or neglect by the Government in failing to file a formal motion before the Court requesting either that the case be set for trial or that the case be continued, so as to stop the running of the Speedy Trial Act clock. The Court specifically did not find that the Government engaged in any efforts to obtain an advantage over Defendants in this case. With regard to the third factor, the impact of reprosecution of the case on the Speedy Trial Act and on the administration of justice, the Court found that the while the Speedy Trial Act is impacted by reprosecution and should be taken into account, reprosecution of this case would not represent an end run by the Government to avoid application of the Speedy Trial Act. The Court further noted that to the extent that the alleged conduct by Defendants was serious, it would be in need of further prosecution, as there would be societal interest in protecting the public through reprosecution of the violations of the nature alleged against Defendants in this case. Based on these factors, the Court concluded that the appropriate

dismissal in this case would be a dismissal without prejudice.  As such, the Court ordered that Defendants' Motions to Dismiss be granted and that the Superseding Indictment in this case be dismissed without prejudice.

IT IS THEREFORE ORDERED that Defendant Gregory Steenblock's Motion to Dismiss Superseding Indictment Under the Speedy Trial Act [Doc. #87] and Defendant House of Raeford Farms Inc.'s Motion to Dismiss Superseding Indictment Under the Speedy Trial Act and Motion to Adopt [Doc. #88] are hereby GRANTED, as set forth herein, and the Superseding Indictment is hereby DISMISSED WITHOUT PREJUDICE.

This the 29th day of February, 2012.

United States District Judge